| WOODLAND BORROW PITS, LLC | * | NO. 2024-CA-0841 |
| | * | |
| VERSUS | | COURT OF APPEAL |
| | * | |
| WOODLAND PLANTATION, LLC | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
25TH JDC, PARISH OF PLAQUEMINES
NO. 66-778, DIVISION "B"
Honorable Michael D. Clement
* * * * * *
**Judge Rosemary Ledet**
* * * * * *

(Court composed of Chief Judge Roland L. Belsome, Judge Rosemary Ledet, Judge Paula A. Brown)

**BELSOME, C.J., DISSENTS IN PART WITH REASONS**.

Jean-Paul Layrisson
Stephen O'Brien Scandurro
SCANDURRO & LAYRISSON, LLC
607 St. Charles Avenue
New Orleans, LA 70130

      COUNSEL FOR PLAINTIFF/APPELLEE

Charles L. Stern, Jr.
Richard L. Traina
STEEG LAW FIRM, LLC
201 St. Charles Avenue, Suite 3201
New Orleans, LA 70170

      COUNSEL FOR DEFENDANT/APPELLANT

            **AFFIRMED**
            **July 16, 2025**

This a declaratory judgment action to resolve competing claims to batture—Tract K-3.[1] Both Plaintiff—Woodland Borrow Pits ("Borrow Pits")—and Defendant—Woodland Plantation ("Plantation")—claim ownership of Tract K-3. From the trial court's judgment granting Borrow Pits' summary judgment motion and declaring Borrow Pits owner of Tract K-3, Plantation appeals. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The disputed property—Tract K-3—is located on the Mississippi River bank just above West Pointe à la Hache in Plaquemines Parish. Tract K-3 was previously a part of Woodland Plantation. In 1916, Deer Range Planting Co.

---

[1] The term batture has multiple meanings; as a commentator observed:

> A study of Louisiana legal texts and jurisprudence leads to the conclusion that batture has three meanings. In the first sense, batture refers to lands of alluvial origin formed by imperceptible deposits of material or by receding waters on the banks of a river; it has the same meaning as accretion. In a second sense, the word batture refers to land formations in the bed of a river, that is, in an area below the ordinary low water mark. In a third sense, the word batture is used to denote the natural bank of a river, that is, the area between the ordinary low and ordinary high stage of the water.

2 LA. CIV. L. TREATISE, PROPERTY § 5:9 (5th ed.).

("Deer Range") acquired all of Woodland Plantation from Pointe Celeste Planting Company, Incorporated ("Pointe Celeste"). Three years later, Deer Range sold part of Woodland Plantation—221 acres divided into 17 numbered lots—to Horace Wilkinson, Jr. ("Mr. Wilkinson"). The 1919 act of sale included a written description of the property sold as including 17 lots, five of which—lots 25, 35, 36, 53, and 54—were described as "fronting the Mississippi River" (the "Wilkinson Deed"). Annexed to the Wilkinson Deed was a map or blue print that James Billingsley prepared in 1916 (the "Billingsley Plat"). The Billingsley Plat did not highlight any part of the then-existing levee or batture as included in the 1919 sale.

Years later, in 1997, Plantation purchased from Mr. Wilkinson's heirs part of the property that Mr. Wilkinson acquired from Deer Range in 1919. The property that Plantation purchased is contiguous with Tract K-3. In 2013, Borrow Pits purchased part of Woodland Plantation that Deer Range retained in the 1919 sale—Tract K. Borrow Pits' 2013 act of sale and a 2013 survey reflect that the property Borrow Pits acquired included Tract K-3.

Thereafter, a dispute arose between Plantation and Borrow Pits over ownership of Tract K-3; both of them claimed ownership. Both of them traced their ownership to a common ancestor-in-title—Deer Range. Tract K-3 abuts the 221.2 acres that Mr. Wilkinson acquired from Deer Range in the 1919 sale. Tract K-3 is the area between the Mississippi River and the then-existing levee shown on the Billingsley Plat.

To resolve the dispute, Borrow Pits commenced this declaratory action against Plantation. In response, Plantation answered and filed a reconventional demand seeking the same relief. Following discovery, Borrow Pits filed a summary judgment motion.

2

To prove its status as Deer Range's successor-in-title and to establish that it has better title to Tract K-3, Borrow Pits introduced an affidavit from the attorney who passed the 2013 act of sale. The attorney identified the multiple property conveyances through which Borrow Pits obtained title of Tract K, which includes Tract K-3, from Deer Range. A copy of the 2013 survey was attached.

In support of its summary judgment motion, Borrow Pits also introduced the affidavit of its expert—Hugh "Bud" McCurdy, III, a Louisiana Registered Land Surveyor. Mr. McCurdy attested to the following:

- The Billingsley Plat was annexed to the 1919 Wilkinson Deed;

- The Billingsley Plat highlighted in dark red the 17 lots included in the 1919 sale; the 17 lots were located within the protection of a then-existing levee and had the boundary line of lots numbered 25, 25, 26, 53, and 54;

- He prepared the 2013 survey in connection with Borrow Pits' acquisition of Track K and the survey reflects the boundary of Tract K-3; and

- "[I]t is more likely than not that the batture along Woodland Plantation, . . . specifically along Tract K-3, existed above the Mean Low Water Plane on March 1, 1919, and that the batture was increasing in height and magnitude after the 1893 survey [by the Mississippi River Commission ("the Commission")] through the date of the 1921 Survey [by the Commission]."

Borrow Pits also introduced various title documents and plats, including the September 18, 1916 act of sale to Deer Range; the March 1, 1919 act of sale to Mr. Wilkinson; and the Billingsley Plat. Opposing the summary judgment motion, Plantation objected to the introduction of the Billingsley Plat, contending it was not proper summary judgment evidence. Plantation argued that the Billingsley Plat was uncertified and thus not admissible under La. C.C.P. art. 966 (4)(a).[2]

_____

[2] La. C.C.P. art. 966 (4)(a) provides:

Both sides introduced excerpts from the depositions of two expert surveyors—Tildon Dufrene and Ralph Gipson. Mr. Dufrene testified that he interpreted "fronting the river" to mean that the land goes all the way to the river's edge. But, Mr. Dufrene agreed that if the judge were to find that the Billingsley Plat controls, then "the property line would run to the south toe of the levee that is shown on the Billingsley [P]lat."

Mr. Gipson testified that "fronting of the river" language was meant to be "geographical and orientational" and that it generally places the land and "lets you know that you are closest to the Mississippi." Mr. Gipson agreed that all highlighted lots on the Billingsley Plat are at the inner levee toe. Mr. Gipson also agreed that the border between the highlighted lots and the then-existing levee was not a "meander line."[3]

Following a hearing, the trial court granted Borrow Pits' summary judgment motion. Complying with La C.C.P. art. 966(C)(4)'s requirement that the court provide reasons for its ruling,[4] the trial court issued written reasons for judgment. In its reasons for judgment, the trial court observed:

---

The only documents that may be filed or referenced in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, certified copies of public documents or public records, certified copies of insurance policies, authentic acts, private acts duly acknowledged, promissory notes and assignments thereof, written stipulations, and admissions. The court may permit documents to be filed in any electronically stored format authorized by court rules or approved by the clerk of the court.

[3] According to the survey expert in *P & G, LLC v. Shingle Point, LLC*, 18-0748 (La. App. 4 Cir. 5/15/19), 273 So. 3d 371, *writ denied*, 19-00982 (La. 9/24/19), 278 So. 3d 980 ("*Shingle Point*"), "meander lines do not indicate the actual boundary but are instead drawn to the edge of usable dry land." 18-0748, p. 7, 273 So.3d at 376.

[4] La. C.C.P. art. 964(C)(4) provides that "[i]n all cases, the court shall state on the record or in writing the reasons for granting or denying the motion. If an appealable judgment is rendered, a party may request written reasons for judgment as provided in Article 1917."

4

[Borrow Pits] traces its ownership of the disputed property to an act of sale by [Pointe Celeste] to [Deer Range] passed on September 18, 1916. [Plantation's] claim to ownership is premised on a March 1, 1919, sale of 221.2 acres of property by Deer Range to Horace Wilkinson, [Plantation's] predecessor in title. The following described property purchased by Deer Range in 1916:

> A certain tract of land known as the Woodland Plantation, situated in the parish of Plaquemines, on the right bank of the Mississippi River at a distance of about forty-four (44) miles below the City of New Orleans, measuring about fifty-five and one-half (55 4') arpents, more or less, **front on said river**, by a depth of forty (40) arpents, bounded above by the Pointe Celeste Plantation and below by the lands of Dave Withan, together with all buildings, improvements, etc.... (Emphasis added)

The property sold by Deer Range to Wilkinson in 1919 was described as follows:

> CERTAIN tracts or portions of the Woodland Plantation, the whole of which plantation is situated in the Parish of Plaquemines on the West Bank of the Mississippi River, about forty-four miles below the City of New Orleans and measures about fifty-five and one-half arpents front on said river and is bounded above by the Pointe Celeste Plantation and below by the lands of David Witham [less and except], the portions of said Woodland Plantation sold hereby to said Horace Wilkinson, consisting of Two Hundred twenty- one and two-tenths (221 & 2/10) acres, **the same being specially shown and delineated on the annexed map or blue print of the Woodland Plantation made under the direction of James W Billingsley, Engineer and Surveyor, made a part of this act; the said lands herein sold and conveyed be numbered and described on said map as lots twenty-five _ (25) thirty-five (35), thirty-six (36), Fifty-three (53) and Fifty-four (54), fronting on the Mississippi River** and lots thirty-nine (39), forty (40) Forty-one (41), Sixty-six (66), and Sixty-seven (67), bounded in the rear by the drainage Canal behind the Pres. cultivated lands, and also lots sixty-three (63), Sixty (60), fifty-seven (57), thirty-seven (37), Thirty-eight (38) Twenty-seven (27) and twenty-six (26); the same aggregating 221 & 2/10 acres. (Emphasis added)

The Billingsley [P]lat referenced above is not in the conveyance records for Plaquemines Parish; however, the Wilkinson sale was passed in New Orleans. Accordingly, the notary public also recorded the Wilkinson sale in the Orleans Parish Notarial Archives. The

Billingsley [P]lat was included in the Orleans Parish records. Borrow Pits asserts that the levee and batture were not included in the sale to Wilkinson because the levee and batture were not delineated in red on the Billingsley [P]lat.

In *Bouligny v. Delatte*, 550 So.2d 929 (La. App. 3[d] Cir. 1989), the Third Circuit stated that where the property is described in reference to an attached plat, the plat controls in the event of a discrepancy in description between the worded description and the plat. In *P & G, LLC v. Shingle Point. LLC*, 2018-00748[, p. 5] (La. App. 4 Cir. 5/15/19), 273 So.3d 371, 375, *writ denied*, 2019-00982 (La. 9/24/19), 278 So. 3d 980, the Fourth Circuit stated:

> Since the earliest days of Louisiana's jurisprudence, the height and magnitude of batture has controlled whether the transfer of batture must be expressly stated in an act of sale. *See Morgan*, 6 Mart. (o.s.) at 233-34, 1819 WL 1297. The act of sale must be specific when the batture becomes susceptible of ownership separate from the riparian property. . . . Whether batture has been formed of sufficient height and magnitude to be susceptible of separate ownership is a question of fact. *Cire v. Rightor*, 11 La. 140, 142 (1837), 1837 WL 754. P & G, as plaintiff in the petitory action, bore the burden of proof at trial.[5]

Plaintiff has eliminated all genuine issues of material fact and is entitled to a declaratory judgment that it is the owner of Tract K-3. The Billingsley [P]lat controls, and it establishes plaintiff's ownership of the tract. Accordingly, the motion for summary judgment is granted.

This appeal followed.

## DISCUSSION

On appeal, Plantation seeks to reverse the trial court's judgment granting

Borrow Pits' summary judgment motion.

---

[5] Here, the applicable substantive law in this action for declaratory judgment on the ownership of immovable property is the same as in a petitory action. 2 LA. CIV. L. TREATISE, PROPERTY § 11:43 (5th ed.) (observing that "[t]he plaintiff in an action for declaratory judgment of the ownership of immovable property has the same burden of proof as a plaintiff in a petitory action against a defendant who is out of possession: he recovers on proof of a better title"); *see also* La. C.C.P. Art. 3654; *Heirs of John Beckwith LLC v. Sims*, 20-0476, p. 16 (La. App. 4 Cir. 3/10/21), 315 So.3d 306, 320 (observing that an action to declare ownership was not a "true petitory" action, but title could be determined by using this procedure).

**Standard of review and summary judgment principles**

An appellate court reviews a trial court's ruling on a summary judgment motion by applying a *de novo* standard. *Planchard v. New Hotel Monteleone, LLC*, 21-00347, p. 2 (La. 12/10/21), 332 So.3d 623, 625.[6] In determining whether summary judgment is appropriate, an appellate court reviews the evidence *de novo*, applying the same principles that govern the trial court's determination of whether summary judgment is appropriate—"whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law." *Id.*, 21-00347, pp. 2-3, 332 So.3d at 625 (citations omitted).

The Louisiana Legislature codified the summary judgment procedure in La. C.C.P. art. 966(A)(3), which provides that "a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." The burden is placed on the moving party. La. C.C.P. art. 966 (D)(1) (providing "[t]he burden of proof rests with the mover"). A genuine issue of fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on the issue, and the granting of summary judgment is appropriate. *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751 (citation omitted). "A material fact is one that 'might affect the outcome of the suit.'" *Breaux v. Ochsner Clinic, LLC*, 23-0062, p. 6 (La. App. 4 Cir. 9/29/23), 382 So.3d 889, 893, *writ denied*, 23-01436 (La. 1/10/24), 376 So.3d 847. Whether a fact is material must be

---

[6] But, an abuse of discretion standard applies in reviewing a trial court's evidentiary ruling regarding competent summary judgment evidence. *See Numa C. Hero & Son, LLP Through Hero v. Brit UW Ltd.*, 2022-0405, p. 8 (La. App. 4 Cir. 12/21/22), 356 So.3d 480, 485 (observing that "the trial court's consideration of evidence in support of a motion for summary judgment is an evidentiary ruling which is subject to the abuse of discretion standard of review").

determined based on the applicable substantive law. *Roadrunner Transp. Sys. v. Brown*, 17-0040, p. 7 (La. App. 4 Cir. 5/10/17), 219 So.3d 1265, 1270 (citation omitted). The summary judgment procedure is favored and shall be construed to "secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969." La. C.C.P. art. 966(A)(2).

**Plantation's arguments on appeal**

Plantation's arguments can be divided into a trio of categories: evidentiary, substantive, and jurisprudential. Plantation's evidentiary argument is that the trial court erred by overruling its objection to the admission of an uncertified copy of the Billingsley Plat. Plantation's substantive argument is that the trial court erred in finding the Billingsley Plat controls the ownership of Tract K-3. Finally, Plantation's jurisprudential argument is that the trial court erred in failing to interpret the language "fronting on the river" in the Wilkinson Deed as it has been interpreted for over two hundred years—dictating that title runs to the river—and in failing to follow *Shingle Point*. We separately address each issue.

*Competent summary judgment evidence*

When an evidentiary objection is made to proposed summary judgment evidence, the trial court "shall specifically state on the record or in writing whether the court sustains or overrules the objections raised." La. C.C.P. art. 966(D)(2).[7] Here, Plantation properly raised an evidentiary issue in its opposition to Borrow Pits' summary judgment motion. Plantation argued that the Billingsley Plat was not competent summary judgment evidence. Although the trial court did not

---

[7] *See* La. C.C.P. art. 966(D)(2) (providing that "[a]ny objection to a document shall be raised in a timely filed opposition or reply memorandum. The court shall consider all objections prior to rendering judgment. The court shall specifically state on the record or in writing whether the court sustains or overrules the objections raised."

expressly sustain or overrule Plantation's objection, the trial court in its written reasons for judgment referenced the Billingsley Plat multiple times. We find these references sufficient to reflect that the trial court overruled the objection.

"The abuse of discretion standard is applicable to the trial court's rulings on objections to documents filed in support of or in opposition to a summary judgment motion that are raised by a party in a timely filed opposition or reply memorandum in accordance with La. C.C.P. art. 966(D)(2)." *Lucas v. Maison Ins. Co.*, 21-1401, p. 12 (La. App. 1 Cir. 12/22/22), 358 So.3d 76, 88-89; *see also Numa C. Hero & Son, supra.*

The governing summary judgment statute sets forth an exclusive list of documents that may be filed in support of a summary judgment motion. *See* La. C.C.P. art. 966(4)(a). "[D]ocuments that are not included in the exclusive list . . . are allowed to be filed if they are properly authenticated by an affidavit or deposition to which they are attached." *Lucas*, 21-1401, p. 14, 358 So.3d at 90 (internal citations omitted). As the official comments to La. C.C.P. art. 966(A)(4) state, "[t]his Subparagraph intentionally does not allow the filing of documents that are not included in the exclusive list, such as photographs, pictures, video images, or contracts, unless they are properly authenticated by an affidavit or deposition to which they are attached." La. C.C.P. art. 966, Official Comment 2015(c).

To qualify as competent summary judgment evidence, a document referenced and authenticated in an affidavit must be either attached to or served with the affidavit; this condition is codified in La. C.C.P. art. 967(A), which provides that "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." But, this condition set forth in La. C.C.P. art. 967(A) only applies when the document does not appear in

the record or was not previously served on the opposing party; "La. C.C.P. art. 967[(A)]'s requirement for sworn records to be attached to affidavits does not apply . . . where [the documents referenced in] the Affidavit were already a part of the record." *In re Med. Rev. Complaint by Downing*, 21-0698, p. 15 (La. App. 4 Cir. 5/26/22), 341 So.3d 863, 873.

Applying these principles here, the Billingsley Plat was referenced in Mr. McCurdy's affidavit;[8] and it was submitted as an exhibit in support of Borrow Pits' summary judgment motion. A copy of the summary judgment motion and the attachments thereto was served on Plantation. Given the Billingsley Plat was properly authenticated by Mr. McCurdy's affidavit and served on Plantation, the trial court did not abuse its discretion in finding the Billingsley Plat is competent summary judgment evidence under La. C.C.P. arts. 966 and 967.

*The Billingsley Plat controls the ownership of Tract K-3.*

Plantation next contends that if the uncertified copy of the Billingsley Plat is competent summary judgment evidence, the trial court nonetheless erred by granting Borrow Pits' summary judgment motion. In support, Plantation observes that Borrow Pits framed the issue presented here as a legal one—whether, when

---

[8] On this point, Mr. McCurdy's affidavit states:

- The original March 1, 1919, Act of Sale by Deer Range Planting Company to Horace Wilkinson (the "Wilkinson Deed") annexed a "map or blueprint" prepared by James Billingsley dated June 1916 (the "Billingsley Plat"); and

- The original blueprint of the Billingsley Plat annexed to the Wilkinson Deed was filed by Arthur J. Peters, a New Orleans attorney and notary public who passed the sale to Horace Wilkinson, was recorded in the Orleans Parish Notarial Archives on March 1, 1919, at Volume 21, Act 27. MSJ Exhibit3 to Woodland Borrow Pits, LLC's Memorandum in Support of Motion for Summary Judgment is an accurate copy of the original, filed Wilkinson Deed, certified by a deputy clerk. MSJ Exhibit4 is an accurate copy of the original, filed Billingsley Plat annexed to the Wilkinson Deed.

10

Lots 25, 35, 36, 53, and 54 "fronting on the Mississippi River" were conveyed to Mr. Wilkinson, did the conveyance of those lots convey property to the river or did the conveyance stop at the land-side toe of the then-existing levee. Borrow Pits' position is that the conveyance stopped at the land-side toe of the then-existing levee and that it has valid title and ownership to Tract K-3. Plantation contends to the contrary, contending that the conveyance of those lots conveyed the property to the river.

Plantation further contends that the trial court erroneously agreed with Borrow Pits' position that because the description of the lots conveyed in the 1919 sale was insufficient or incomplete, the Billingsley Plat, which was referenced in the Wilkinson Deed, must be consulted and controls. Plantation acknowledges the general rule—which the trial court relied upon in its reasons for judgment—that when there are discrepancies between the textual description of property conveyed and the description of the conveyed property shown on a plat of survey, the plat or survey will control and govern the conveyance. *Shingle Point*, 18-0748, p. 8, 273 So.3d at 376. But, Plantation contends that an exception to the general rule applies here.

According the Plantation, the general rule does not apply when the plat is not prepared as a survey of the property conveyed and when it possesses none of the dignity or attributes or indicia of accuracy generally identified or associated with a survey of property. *See Griffin v. Daigle*, 99-1942, p. 13 (La. App. 1 Cir. 9/22/00), 769 So.2d 720, 728 (observing that "this general rule has no application when the map or plat is not prepared as a survey of the property and possesses none of the dignity or attributes or indicia of accuracy, generally identified or associated with a survey of property"); *see also Gore v. Ronaldson*, 200 So.2d 46,

11

51 (La. App. 1st Cir. 1967) (refusing to apply the general rule when the plat was not attached to the deed, was not prepared as a survey of the property in question, and contained errors). Plantation emphasizes that the Billingsley Plat was prepared in 1916, three years before the 1919 sale. Plantation thus contends that the Billingsley Plat was not prepared as a survey of the 17 lots that Deer Range conveyed to Mr. Wilkinson in the 1919 sale.

Borrow Pits counters that the "specially shown and delineated" lots on the Billingsley Plat—whose sum total of each individual lot acres noted on the plat totals 221.2 acres—were, in fact, prepared expressly for the 1919 sale according to the Wilkinson Deed. Borrow Pits further counters that the two cases Plantation cites in support of an exception to the general rule are both distinguishable. We find Borrow Pits' arguments persuasive.

When, as here, a map is annexed to a deed and referenced in the description in the deed, the annexing of the map results in making "the map as important as part of the description as if it had been actually copied in the deed." *Casso v. Ascension Realty Co.*, 196 So. 1, 15 (La. 1940) (internal citation and quotations omitted). Here, the Billingsley Plat is an indispensable part of the 1919 sale; it possesses the dignity, attributes, and indicia of accuracy that are generally associated with an attached and referenced survey. *See Griffin*, 99-1942, p. 13, 769 So.2d at 728.

The two cases Plantation cites are distinguishable. In *Griffin*, the court observed that the general rule was inapposite "because the map attached to the partition is a rough sketch [that referenced a public road] with a fair degree of accuracy, but not precise enough to answer the question of which 'public road' was meant in the partition." 99-1942, p. 13, 769 So.2d at 728-29. And, *Gore* involved a

map that admittedly had errors. 200 So.2d at 51. The trial court thus correctly concluded that the Billingsley Plat is controlling of the ownership issue.

> *"Fronting on the river" language is irrelevant and the <u>Shingle Point</u> case is distinguishable*

Plantation's final contention is a jurisprudential one—that the trial court erred in failing to follow two hundred years of jurisprudence interpreting the language "fronting on the river"—that appears in the Wilkinson Deed—to mean the transfer is up to the river. Plantation's argument regarding the language "fronting on the river" is based on the Supreme Court's judicial interpretation of the language, not conflicting expert testimony on the meaning of the language.[9]

In *Shingle Point*, this Court observed that "standing on its own, the phrase ["fronting on the river"] means the lots would go up to the river" and that the Louisiana Supreme Court has recognized this interpretive concept for two hundred years. 18-0748, p. 6, 273 So.3d at 375 (citing *Morgan v. Livingston*, 6 Mart. (o.s.) 19, 225 (La. 1819), 1819 WL 1297). Citing *Shingle Point*, Plantation contends that when its predecessor-in-title—Mr. Wilkinson—acquired the lots "fronting on the Mississippi River," he acquired the levee (bank) and alluvion (batture) that formed on the Mississippi River bank through accretion or dereliction up to the river's ordinary low water stage in front of those lots. According to Plantation, the Billingsley Plat cannot overrule an interpretation of the language "fronting on the river" that the Louisiana Supreme Court has recognized for two hundred years.

---

[9] As noted elsewhere in this opinion, one expert, Mr. Dufrene, testified that he interprets "fronting the river" as meaning that the land goes all the way to the river's edge"; another expert, Mr. Gipson, testified that the "fronting of the river" language was meant to be "geographical and orientational" that "generally places" the land and "lets you know that you are closest to the Mississippi."

To address this issue, a brief review of the principles governing batture ownership is necessary. This Court extensively reviewed those principles in *Shingle Point*. The trial court quoted some of those principles in its written reasons for judgment. This Court in *Shingle Point* additionally observed that "where an estate is bounded by the Mississippi River or is described as fronting on the river, then it is understood to include the rights to any alluvion [batture] that may form, at the same time being subject to any diminution from erosion of the banks." *Shingle Point*, 18-0748, p. 4, 273 So.3d at 374. We further observed that "[t]he right to accretion is an accessory of the riparian estate; however, once alluvial soil has so built up along the water's edge as to appear above the water at its ordinary stage, the resulting land or batture becomes susceptible of ownership separate from the riparian estate." *Id*. (internal citations omitted). As a commentator has observed, "batture already formed is not included in the sale of a riparian estate unless it is expressly so stated in the act of sale. Thus, in effect batture already formed is not considered to be a component part of the riparian estate." 2 LA. CIV. L. TREATISE, PROPERTY § 7:16 (5th ed.).

Again, as the trial court observed in its written reasons for judgment, "[w]hether batture has been formed of sufficient height and magnitude to be susceptible of separate ownership is a question of fact." *Shingle Point*, 18-0748, p. 5, 273 So.3d at 375. Here, the fact question—whether batture had sufficiently formed at the time of the 1919 sale—is dispositive. This question is dispositive because the Billingsley Plat is controlling and fails to delineate any part of Track K-3, the batture, as included in the 1919 sale. If the fact question is answered affirmatively, Borrow Pits has better title and is entitled to a declaratory judgment in its favor, as the trial court found.

In *Shingle Point*, this Court affirmed the trial court's finding that express language was not required to effectuate the transfer of the batture at issue. In so finding, we stressed that "[i]mplicit in [the trial court's] judgment is a finding that, at the relevant time period, the batture was not of sufficient elevation above the water in such a way as to give it a reasonable appearance of permanence." *Shingle Point*, 18-0748, p. 7, 273 So.3d at 376. This Court observed that the trial court's factual finding that there was no separately owned batture at the time of the relevant sales was based on expert testimony regarding "[u]se of the term 'front on the river,' the practice of using meander lines, and the fact that the batture was not specifically indicated as a separate lot." *Id*., 18-0748, p. 8, 273 So.3d at 377. Given the factual finding that batture did not separately exist at the time of the sales, this Court observed that the trial court's finding that a plat showing a boundary that did not extend to the river was consistent with the act of sale language. *Id*., 18-0748, p. 9, 273 So.3d at 377.

*Shingle Point* is distinguishable from this case in at least three ways. First, unlike in *Shingle Point*, construing the language in the Wilkinson Deed—the 1919 act of sale—to mean that the boundary extended to the river would be inconsistent with the annexed Billingsley Plat. Second, unlike in *Shingle Point*, there are no meander lines at issue here; rather, as Mr. McCurdy's affidavit states, "the 17 lots [transferred in the 1919 sale] were located within the protection of a then-existing levee and had the boundary line of lots numbered 25, 25, 26, 53, and 54." And, as one of the expert surveyors—Mr. Gipson—testified, the border between the lots highlighted on the Billingsley Plat and the then-existing levee was not a meander line.

Finally, as Borrow Pits points out, the plaintiff in *Shingle Point* failed to present evidence to establish that batture existed above the mean low water plane—the ordinary stage—at the time of the relevant sales. Here, Borrow Pits presented such evidence—Mr. McCurdy's affidavit—establishing that batture existed at the time of the 1919 sale. Indeed, at the summary judgment hearing, Borrow Pits' counsel explained that the purpose for producing such expert evidence was to cure the evidentiary deficiency presented in *Shingle Point*. For these reasons, Plantation's reliance on the *Shingle Point* case and the "fronting on the river" language is misplaced.

### Borrow Pits' evidence established as a matter of law its better title to Tract K-3 and its entitlement to summary judgment

Borrow Pits, as the mover, produced evidence in support of its summary judgment motion that, at the time of the 1919 sale, batture had already formed—that it existed at a height above the mean low water line. To establish this fact, Borrow Pits produced its expert's affidavit—Mr. McCurdy's affidavit. As noted elsewhere in this opinion, Mr. McCurdy attested that "it is more likely than not that the batture along Woodland Plantation, . . . specifically along Tract K-3, existed above the Mean Low Water Plane on March 1, 1919, and that the batture was increasing in height and magnitude after the 1893 survey [by the Mississippi River Commission (the "Commission")] through the date of the 1921 Survey [by the Commission]."

Mr. McCurdy's affidavit coupled with the Commission's 1893 and 1921 surveys (attached to his affidavit), established that the batture was at least two feet by 1893 and rose to four feet over the mean low water plane by 1921. Given this case involves a summary judgment motion, once Borrow Pits presented such

16

expert opinion evidence, it was incumbent on Plantation to respond with rebuttal evidence. *See* La. C.C.P. art. 967(B).[10] Put differently, if Plantation wanted to controvert the evidence that the batture existed at the time of the 1919 sale, it was required to present contrary evidence. As Borrow Pits' counsel pointed out at the summary judgment hearing, Plantation could have hired an expert surveyor or a hydrologist, or put on some other type of evidence. It failed to do so. Indeed, at the summary judgment hearing, Plantation offered only arguments of counsel.

At the summary judgment hearing, Plantation's counsel made two arguments. First, Plantation's counsel argued that Mr. McCurdy used an incorrect legal standard in opining that batture existed. Plantation's counsel argued that the test, as stated in *Shingle Point*, is "the ordinary state" and not the "mean low water plane" stated in Mr. McCurdy's affidavit. This argument is based on the language in *Maginnis Land & Improvement Co. v. Marcello*, 123 So. 653, 655 (La. 1929), *on reh'g* (6/17/29), that "a batture in front of the ripparious owner becomes visible above the surface of the water at its ordinary stage, [giving it] a reasonable appearance of permanence, it then becomes. . . . property of the owner of the soil of the shore to which it is attached." *Id*. But, the jurisprudence has consistently defined batture as "the area between ordinary low and ordinary high stage of the water of a navigable river." 2 LA. CIV. L. TREATISE, PROPERTY § 5:9 (5th ed.). The

---

[10] La. C.C.P. art. 967(B) provides:

> When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.

terminology used in Mr. McCurdy's affidavit is not wrong. Rather, the terms "mean low water plane" and "ordinary stage," in this context, are interchangeable.

Second, Plantation's counsel argued that Tract K-3 was not indicated as a separate lot or otherwise separately labeled in the 1919 sale. Plantation's counsel argued that "[i]f there was any land on the riverward side of the levee, it would have been labeled. And it's not." Continuing, Plantation's counsel argued that there was no indication that land existed on the riverward side of the levee that somehow was not transferred. In response to this argument, the trial court cited Mr. McCurdy's affidavit as "saying otherwise." The record supports the trial court's finding. Mr. McCurdy's affidavit, which is uncontested, establishes the existence of batture at the time of the 1919 sale.

Plantation offered only arguments of counsel in response to Mr. McCurdy's affidavit. Arguments of counsel are not evidence. *Taylor v. Joseph*, 24-0461, p. 12 (La. App. 4 Cir. 1/30/25), 408 So.3d 269, 277 (observing that "it is well-settled law that argument of counsel is not evidence"). "Summary judgment cannot be defeated by mere argument." *Jackson v. City of Zachary*, 22-0148, p. 10 (La. App. 1 Cir. 11/1/22), 354 So.3d 62, 68.

To recap, the Billingsley Plat is competent summary judgment evidence and determines who owns Tract K-3. Given Plantation's failure to offer rebuttal evidence to Mr. McCurdy's affidavit or to present any argument to invalidate the affidavit, it is undisputed that batture existed at the time of the 1919 sale.[11] The

---

[11] Before this Court, Plantation, in its reply brief, voices yet a different challenge to Mr. McCurdy's affidavit—that Mr. McCurdy's calculations regarding the height of the batture in his affidavit are incorrect. "The issue of [Mr. McCurdy's alleged miscalculations] is an altogether new issue not properly before this Court." *Greenblatt v. Sewerage & Water Bd. of New Orleans*, 19-0694, p. 12 (La. App. 4 Cir. 12/20/19), 287 So.3d 763, 771. Put another way, this altogether new argument—raised for the first time on appeal in a reply brief—is not properly before this Court. *See* La. Unif. R. Ct. App. 2-12.6 (providing that "appellant may file a reply brief . . . but it

trial court, in its written reasons for judgment, correctly concluded that "[Borrow Pits] has eliminated all genuine issues of material fact and is entitled to a declaratory judgment that it is the owner of Tract K-3." Likewise, the trial court correctly declared that the Billingsley Plat controls and establishes Borrow Pits' ownership of Tract K-3. Accordingly, we affirm the trial court's judgment in Borrow Pits' favor.

## DECREE

For the foregoing reasons, the trial court's judgment is affirmed.

**AFFIRMED**

---

shall be strictly confined to rebuttal of points urged in the appellee brief"). Plantation's attempt to raise a new challenge to the McCurdy affidavit in its reply brief is thus unpersuasive.